UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMMY COX, as the Personal Representative of the ESTATE of TONY RAY COX, Deceased, | ) ) ) | Case No. |
| | ) | Hon. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | |
| OAKLAND COUNTY, a Michigan governmental unit, UNKNOWN OAKLAND COUNTY DEPUTY SHERIFFS JOHN DOE #1-8, in their individual capacities, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Todd Russell Perkins (P55623)
PERKINS LAW GROUP, PLLC
Attorneys for Plaintiff
615 Griswold, Suite 400
Detroit, MI 48226
313-964-1702

LAW OFFICES OF JOEL B. SKLAR
JOEL B. SKLAR (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
313-963-9310 (fax)
joel@joelbsklarlaw.com

**COMPLAINT AND JURY DEMAND**

Plaintiff Tammy Cox, as the Personal Representative for the Estate of Tony Ray Cox, Deceased, by and through her attorneys Perkins Law Group, PLLC, and Law Offices of Joel B. Sklar, files this action pursuant to Michigan's Wrongful Death Act, being *MCL §600.2922,* and *42 USC §1983* against Unknown Oakland County Sheriff Deputy John Doe #1-8 and Oakland County, a Michigan governmental unit and says:

1.      This is a Wrongful Death Action filed pursuant to *MCL §600.6922* and *42 U.S.C. §1983* to vindicate the *Fourth* and *Fourteenth Amendment* rights of Tony Cox, deceased, a, 33-year-old unarmed Black man, 6' tall and 390 lbs., who was shot nine times in the back and killed by Defendant Oakland County Deputy Sheriffs (Deputy Sheriffs) John Doe #1-8 while Tony Cox was running away.  The incident was captured on unreleased police video body worn cameras and in-car dash camera recordings. After the shooting, Oakland County released one photo of Tony Cox standing outside a silver four-door sedan, his hands clasped and extended toward the officers; but that is not where, when, or how Tony Cox died. Plaintiff's counsel was briefly permitted to view a snippet of an unreleased police video selected by high-ranking Oakland County Deputy Sheriffs with corporation counsel at 1200 N. Telegraph, Pontiac, Michigan. The incident began with an unlawful stop of Tony Cox by Deputy Sheriff John Doe #1. The stop took place at about 9:00 pm on a residential street in a quiet Pontiac neighborhood, where the Oakland County

2

Sheriff's Department (OCSD) has a substation. The Deputy Sheriffs were not called to the scene and Tony Cox, deceased, had not committed any criminal, traffic, or other offense to justify the stop. Nonetheless, Defendant Deputy Sheriff John Doe #1 flashed his overhead flashing lights behind Tony Cox who promptly pulled the silver sedan over, remained seated and belted, placed both hands on top of the steering wheel so Deputy Sheriff John Doe #1 could see them. Tony Cox made no furtive or other suspicious gestures. When approached by Deputy Sheriff John Doe #1, Tony Cox, deceased, lowered his driver's side window, was cooperative, polite, and handed the Deputy Sheriff his driver's license and registration. Deputy Sheriff John Doe #1 confirmed Tony Cox's identification, knew he bore no resemblance to anyone suspected in the "shots fired incident" and had no reason to further detain him. Deputy Sheriff John Doe #1 unlawfully prolonged the stop to give Deputy Sheriffs John Doe #2-8 time to arrive. Deputy Sheriff John Doe #2-8 arrived with a large show of force, including scout cars and large utility vehicles with overhead lights flashing. Deputy Sheriff John Doe #2-8 exited their vehicles and descended upon the four-door sedan with flashlights blinding Tony Cox, deceased, and peering into the interior of the vehicle. Tony Cox, deceased, told Deputy Sheriff John Doe #1 that he thought the swarming officers were going to kill him. Deputy Sheriff John Doe #1 offered no response and made no effort to deescalate or otherwise calm the situation which the individual Defendants created and worsened. Up to this point,

3

Tony Cox, deceased, had fully complied with Deputy Sheriff John Doe #1. He had not actively resisted any lawful command or order or engaged in any suspicious or criminal conduct. Despite this undisputed fact, the Defendant Sheriffs John Does #1-8 drew their weapons on Tony Cox, deceased, and/or deployed their metal batons all while shouting conflicting orders; none of which Tony Cox could comply with without the strong possibility of getting killed, just as he feared and told Deputy Sheriff John Doe #1 moments before. Defendant Deputy Sheriff John Doe #3 broke the rear passenger window of the sedan with his metal baton despite the fact Tony Cox had engaged in no active resistance. In self-defense from the unlawful stop, unlawful detention, and use of excessive force by Defendant Sheriffs John Doe #1-8, Tony Cox maneuvered the sedan around the police scout cars and utility vehicles. Tony Cox headed north reaching northbound Westway Street. The Defendant Deputy Sheriffs chased him. Just before Benson Street, Deputy Sheriff John Doe #4 performed a dangerous PIT (Precision Immobilization Technique) maneuver which spun the sedan around coming to rest in a driveway. Tony Cox got out of the sedan, clasped his hands which were extended outward. Defendant Deputy Sheriff John Doe #5 fired shots at Tony Cox which had no apparent effect. Tony Cox began to run away from Defendant Deputy Sheriffs John Doe #1-8. Tony Cox's right hand held up his britches which were falling down, partially exposing his buttocks. His left hand was empty. Tony Cox made it about 30-50 feet away from the sedan when

4

Defendant Deputy Sheriffs John Doe #1–8 rapidly emptied their weapons shooting Tony Cox nine times in the back, one of which pierced his aorta and killed him. While he was lying on the ground, Deputy Sheriff John Doe #6 ordered Tony Cox to "get up" and kicked his lifeless body. None of the Defendant Sheriffs attempted to resuscitate Tony Cox. No weapon was found on or near Tony Cox because he had none. No evidence of any kind connected Tony Cox to any criminal activity, let alone the purported shooting one week earlier. The Oakland County Medical Examiner ruled the death a "Homicide." (**Exhibit A**, Post-Mortem Report) Presumably, an internal affairs investigation by a law enforcement agency was conducted about the fatal shooting, the results of which remain unknown to Plaintiff. No one from Oakland County has communicated with the family of Tony Cox about the results of any investigation into the fatal shooting, the discipline imposed on Defendant Deputy Sheriffs, if any, and whether the matter was referred to the Oakland County Prosecutor's Office for consideration of criminal charges against any or all of the Defendant Deputy Sheriffs. Plaintiff seeks justice for her only son's unjustifiable homicide by Defendants.

2.    Plaintiff Tammy Cox is the mother of Tony Cox, deceased, and the duly appointed Personal Representative of the Estate of Tony Ray Cox, deceased, which Estate was opened in Macomb, County, Michigan. (**Exhibit B**, Letters of Authority)

3.      Unknown Oakland County Deputy Sheriff (hereinafter "Deputy Sheriff") John Doe #1 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

4.      Deputy Sheriff John Doe #2 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

5.      Deputy Sheriff John Doe #3 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

6.      Deputy Sheriff John Doe #4 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

7.      Deputy Sheriff John Doe #5 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

8.      Deputy Sheriff John Doe #6 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

9.      Deputy Sheriff John Doe #7 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

10.     Deputy Sheriff John Doe #8 is a sworn officer who resides and/or does business in Oakland County, Michigan, which is located in this Judicial District.

11.     Defendant Oakland County is a Michigan unit of government which operates the Oakland County Sherrif's Department (OCSD), which is located and/or does business in this Judicial District.

12.     Defendant Deputy Sheriff John Doe # 1-8 was acting under the color of state law.

13.     None of the individual state actors may avail themselves of qualified immunity because each individual Defendant Deputy Sheriff violated Plaintiff's clearly established *Fourth Amendment* and/or *Fourteenth Amendment* rights against unreasonable searches, seizures the use of excessive force (i.e., among other things, using force on a suspect who is not actively resisting and/or shooting an unarmed fleeing suspect nine times in the back) which any reasonable officer would have known.

14.     None of the individual state actors may avail themselves of governmental immunity for their intentional torts made in bad faith and/or for their gross negligence as provided in *MCL §691.1407(2)*.

15.     The incidents, events and transactions which form the basis of this Complaint all took place in Pontiac, Michigan, which is also in this Judicial District.

16.     This Court has original jurisdiction over this matter pursuant to *28 USC §1331* and *42 USC §1983* because this case and controversy involves a federal question.

17.     This Court has pendant and/or ancillary jurisdiction over Plaintiff's state claims pursuant to *28 USC §1367.*

## COMMON FACTUAL ALLEGATIONS

18.     On Wednesday, December 13, 2023, at about 9:00 p.m., Tony Cox, deceased, was stopped by Deputy Sheriff John Doe # 1-8 in the City of Pontiac, Michigan.

19.     Tony Cox, deceased, had not committed any crime, traffic violation or other offense to justify the stop but immediately complied with Deputy Sheriff John Doe #1's order and pulled over to the side of the road.

20.     Unknown to Tony Cox, deceased, Defendant Deputy Sheriff John Doe #1 purportedly effectuated the stop because the silver 4-door sedan driven by Tony Cox had allegedly been involved in a "shots fired incident" about one week prior at the Carriage Circle Apartment Complex located on North Arbor St. and North Pike St. in Pontiac, Michigan.

21.     No public records exist of the alleged "shots fired incident" referred to above.

22.     Defendant Deputy Sheriff John Doe #1 approached Tony Cox who politely asked why he was stopped and handed Deputy Sheriff John Doe #1 his operator's license and registration.

23.     Tony Cox placed his hands on the steering wheel where Defendant Deputy Sheriff John Doe #1 could see them.

8

24.    Tony Cox was six feet tall and weighed 390 pounds, a physical description which did not match any of the persons suspected by law enforcement to have any involvement in the alleged "shots fired incident" a week prior.

25.    Defendant Deputy Sheriff John Doe #1 did not ask Tony Cox to step out of the vehicle for a pat down or give Tony Cox any other cogent order.

26.    Defendant Deputy Sheriff John Doe #1 held onto Tony Cox's license and registration to prolong the stop for Defendant Deputy Sheriff John Doe #2-8 to arrive.

27.    Tony Cox, deceased, had committed no crime, was unarmed, had fully cooperated with Defendant Deputy Sheriff John Doe #1, and had not actively resisted any lawful order or command given him.

28.    Nonetheless, Defendant Deputy Sheriff John Doe #2-8, swarmed the 4-door silver sedan with flashlights searching the interior of the vehicle but saw no weapons, contraband, or anything unlawful.

29.    Tony Cox was terrified by the frenetic, hyped-up, out-of-control Deputy Sheriffs John Doe #1-8 and told Defendant Deputy Sheriff John Doe #1 that be believed the officers were going to kill him. He was prescient.

30.    Without warning Defendant Deputy John Doe #2-3 positioned their police vehicles in front of, behind and next to the driver's side of the 4-door silver sedan to box in the vehicle.

9

31.     Despite the lack of any active resistance, Defendants Deputy Sheriff John Doe #1-8 drew their weapons, aimed at Tony Cox and/or deployed their metal batons to physically threaten Tony Cox with violence, all while shouting conflicting commands he could not possibly comply with without getting shot and killed.

32.     Despite showing no active resistance, Defendant Deputy Sheriff John Doe #3 shattered the four-door silver sedan's rear car window with his metal baton.

33.     Fearful for his life, Tony Cox maneuvered his sedan around the Defendant Deputy Sheriffs and drove north eventually reaching, a densely populated Benson Street, where Deputy Sheriff John Doe #4 performed a dangerous PIT maneuver which caused the sedan to spin in reverse direction and came to a stop in the  well-lit driveway of 656 Benson Street.

34.     Tony Cox opened the door of his sedan, clasped both hands with his arms outstretched in the direction of Defendant Deputy Sheriff John Doe #5, who responded with gunfire which had little to any effect on Tony Cox.

35.     Tony Cox dropped his hands and began to run away from the Deputy Sheriffs.

36.     Tony Cox held his pants up with his right hand and fled with his back facing the Deputy Sheriffs.

37.     Tony Cox ran about 30-50 feet his with his back toward Defendant Deputy Sheriff John Doe #1-8 all of whom fully unloaded their weapons and shot

Tony Cox at least nine times in the back, one shot passed through his heart killing him. .

38.     As he lay dead on the ground, in a pool of his blood, Defendant Deputy Sheriff John Doe #6 ordered Tony Cox, deceased, to "get up" and kicked Tony Cox's lifeless body.

39.     None of the Defendant Deputy Officers made any efforts to revive or resuscitate Tony Cox.

40.     A search of the silver sedan found no gun, other weapon, or evidence of criminal activity.

41.     No evidence of any kind linked Tony Cox, deceased, with any alleged "shots fired incident" which purportedly occurred a week before.

42.     Any suspicion of criminal activity was dispelled as soon as Defendant Deputy Sheriff John Doe #1 verified Tony Cox's identification, physical description, and size, all of which excluded Tony Cox as a suspect in any purported "shots fired incident" a week prior.

43.     A post-mortem report by the Oakland Couty Medical Examiner identified the manner of death as a "Homicide" which prompted an immediate internal affairs investigation into the fatal shooting conducted by Oakland County or another law enforcement agency.

44.    A post-mortem report from the Oakland County Medical Examiner showed no alcohol or illicit drug in Tony Cox's system.

45.    Defendant Oakland County has not provided Plaintiff decedent's mother, the family, or the public with police videotapes, dispatch tapes or other evidence related to the wrongful shooting death of Tony Cox.

46.    No Oakland County Detective or other member of law enforcement contacted Tony Cox's family to explain why or how their beloved son and brother who worked full time as an engineer was shot nine times in the back and killed by Defendant Deputy Sheriffs John Doe #1-8.

47.    Instead, Oakland County released a still photo of Tony Cox, deceased, with his empty hands clasped and extended toward the Defendant Deputy Sheriffs to give the false impression he had a weapon (which he did not) and/or shot a weapon (which he had not) and was killed while facing the Deputy Sheriffs (he was shot in the back nine times about 30-50 feet away from the sedan).

48.    Tony Cox acted in self-defense of his reasonable belief that Defendant Deputy Sheriff John Doe #1-8 were going to kill him which, in fact, they did.

49.    Tammy Cox, the mother and Personal Representative of the Estate of Tony Cox, deceased, files this *Wrongful Death Action* against Defendant Oakland County Deputy Sheriffs John Doe #1-8 and Oakland County pursuant to *42 USC 1983* (and state law) for the unlawful stop, prolonged detention, unlawful seizure,

12

and unlawful use of lethal force in violation Tony Cox's clearly established *Fourth*

and *Fourteenth Amendment* rights.

## COUNT I

### WRONGFUL STOP, PROLONGED DETENTION, FALSE ARREST AND UNREASONABLE USE OF LETHAL FORCE IN VIOLATION OF THE *FOURTH AMENDMENT* PURSUANT TO *42 USC §1983*

50.     Plaintiff, Tammy Cox as the Personal Representative of the Estate of

Tony Cox, Deceased, reasserts each paragraph above word for word.

51.     The *Fourth Amendment* to the U.S. Constitution guarantees all citizens

the right to be free from unreasonable searches and seizures by state actors.

52.     Defendant Deputy Sheriff John Doe #1 had no articulable reasonable

suspicion or probable cause to stop Tony Cox, deceased, on December 13, 2023, let

alone for an alleged "shots fired incident" purportedly a week earlier which had

nothing to do with Tony Cox.

53.     Any notion that Tony Cox, decedent, participated in any alleged "shots

fired incident" was immediately dispelled when Defendant Deputy Sheriff John Doe

#1 saw Plaintiff's decedent's operator's license and knew Tony Cox, deceased, did

not resemble any suspect purportedly involved in the any alleged "shots fired

incident" a week earlier.

54.    Despite the lack of legal justification, Defendant Deputy Sheriff John Doe #1-8 would not allow Tony Cox, deceased, to leave the unlawful stop, prolonged his unlawful detention and effectively arrested him without probable cause.

55.    Defendants Deputy Sheriffs John Doe #1-8 attempted to box Tony Cox, deceased, in with their vehicles, drew their weapons and/or batons, broke the sedan's window and used other objectively unreasonable force to unlawfully confine Tony Cox, deceased, which placed him in reasonable fear for his life, just as he had told Defendant Deputy Sheriff John Doe #1 moments before.

56.    Tony Cox, deceased, lawfully maneuvered his vehicle around Defendant Deputy Sheriff John Doe #1-8 and drove away as described above.

57.    Defendant Deputy Sheriff John Doe #1-8 used unreasonable and excessive force when they shot at Tony Cox, deceased, when he got out of the sedan unarmed after the PIT maneuver.

58.    Defendant Deputy Sheriff John Doe #1-8 used unreasonable and excessive force when they shot Tony Cox, deceased, at least nine times in the back while he was running away from the scene and of no threat of danger to anyone.

59.    Defendant Deputy Sheriff John Doe #1-8 were on fair notice that their stop, prolonged detention, false arrest, and use of lethal force by shooting Tony Cox nine times in the back while he was unarmed and running away violated Tony Cox's clearly established *Fourth Amendment* rights.

14

60.     As a direct and proximate result of the actions of Defendant Deputy Sheriff John Doe #1-8, Tony Cox, deceased, suffered conscious pain and suffering, funeral expenses, lost earnings, terror, shock, dismay, confusion, disbelief, emotional distress, the loss of the pleasures of life, the loss of financial support, loss of the society and companionship of the deceased, and other damages, allowed by law and statute, including punitive damages for Defendants' utter disregard of Tony Cox's clearly established *Fourth Amendment* rights.

61.     In addition to the compensatory, economic, consequential, and special damages available, Plaintiff is entitled to punitive damages against each of the individually named Defendant Deputy Sheriffs John Doe #1-8 under *42 USC § 1983*, in that the actions of each of the individual Defendant Deputy Sheriffs John Doe #1-8 were malicious, willful or with reckless or wanton disregard of Tony Cox's constitutional rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants John Doe #1-8, jointly and severally, for damages in whatever amount in excess of this Court's jurisdictional limits to which Plaintiff is entitled, which is reasonable, fair, and just, plus costs, interest and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988*.

## COUNT II

### *FOURTEENTH AMENDMENT* EQUAL PROTECTION VIOLATION AND CONSPIRACY IN VIOLATION OF *42 USC §1985*

62.    Plaintiff reasserts each allegation above, word for word, paragraph for paragraph.

63.    The *Fourteenth Amendment's Equal Protection Clause* provides:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

64.    Plaintiff, as a Black male, is among the class of persons protected under the *Equal Protection Clause* and *42 USC §1985.*

65.    Defendant Deputy Sheriff John Doe #1-8 were inclined and predisposed to treat similarly situated Black persons differently from White persons and did so with Plaintiff.

66.    Defendant OCSD has a long history of animus and discrimination towards Black persons which animus and discrimination has gone unrecognized and unaddressed by the OCSD, including the disproportionate use of excessive and lethal force on Black suspects as opposed to similarly situated White suspects who engaged in conduct like that of Plaintiff's decedent but were treated differently.

67.    Defendant OCSD violated Plaintiff's clearly established *Fourth* and *Fourteenth Amendment Equal Protection* rights, when they seized him without

probable cause, prevented his freedom of movement, used excessive force, swarmed and attacked his vehicle, caused his vehicle to dangerously crash using a PIT maneuver, drew their weapons and shot him nine times in the back causing his tragic death *because* he was Black.

68.     Similarly situated White citizens were treated more favorably than Tony Cox, deceased, under the same or similar circumstances *because* they were White.

69.     Had Plaintiff's decedent been White, Defendants would not have stopped, detained, arrested, or used excessive force and he would be alive today.

70.     Among other things, the OCSD's racial animus towards Black persons was demonstrated by Defendant Deputy Sheriffs' stop of Tony Cox, deceased, their presumption that he was armed, dangerous and engaged in criminal conduct because of his race and their failure to make any effort to resuscitate Tony Cox, deceased, after shooting him nine times in the back and kicking his lifeless body.

71.     The Defendants conspired for the purpose of depriving Tony Cox, deceased,  directly or indirectly, the equal protection of the laws, privileges, and immunities under the laws, took acts in furtherance of the conspiracy as described above, including the release of the single still photo which misrepresented how, when and where Tony Cox, deceased, was killed all in deprivation of his clearly established *Fourth* and *Fourteenth Amendment* rights in violation of *42 USC §1985*.

72.     Each Defendant Deputy Sheriff had a duty to intervene and opportunity to stop the *Fourth Amendment* and *Fourteenth Amendment* violations described herein.

73.     Each Defendant Deputy Sheriff breached their duty to intervene and, instead of stopping their fellow Defendant Deputy Sheriffs from violating Tony Cox's guaranteed federal rights, each Defendant Deputy Sheriff voluntarily participated in the violations, escalated, and created the conditions which ultimately led to the wrongful death of Tony Cox.

74.     Defendant Deputy Sheriffs John Doe #1-8 are not entitled to qualified immunity for the violation of Plaintiff's clearly established *Fourteenth Amendment* rights of which any reasonable person would know.

75.     As a direct and proximate result of the actions of Defendant Deputy Sheriff John Doe #1-8, Tony Cox, deceased, suffered conscious pain and suffering, funeral expenses, lost earnings, terror, shock, dismay, confusion, disbelief, emotional distress, the loss of the pleasures of life, hedonic damages, the loss of financial support, the loss of the society and companionship of the deceased, and other damages, allowed by law and statute, including punitive damages for Defendants' utter disregard of Tony Cox, deceased's clearly established *Fourth Amendment* rights.

76.     In addition to the compensatory, economic, consequential, and special

damages available, Plaintiff is entitled to punitive damages against each of the individually named Defendants under *42 USC § 1983,* in that the actions of each of the individual Defendants were malicious, willful or with reckless or wanton disregard of Plaintiff's constitutional rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants John Doe #1-8, jointly and severally, for damages in whatever amount in excess of this Court's jurisdictional limits to which Plaintiff is entitled, which is reasonable, fair, and just, plus costs, interest and reasonable attorney fees, together with punitive damages as permitted under *42 USC §§ 1983, 1985* and *1988.*

## COUNT III

### *MONELL* CLAIM AGAINST OAKLAND COUNTY

77.    Plaintiff reasserts each allegation above, word for word and paragraph for paragraph.

78.    At the time of the constitutional deprivations discussed above, Defendant Oakland County had an illegal policy or custom of violating the *Fourth Amendment's* prohibition against unlawful search and seizures, including shooting an unarmed fleeing suspect in the back who was no danger or threat to anyone, and/or treating Black persons differently from White persons in violation of the *Fourteenth Amendment's Equal Protection Clause,* as Plaintiff's decedent was treated in this case.

19

79.    At the time of the constitutional deprivations described above, Oakland County failed to train its deputies in the requirements for an investigative stop, the proper use of lethal force, and further trained, expected and encouraged officers to treat Black citizens differently from similarly situated White citizens, as Plaintiff's decedent was treated in this case.

80.    At the time of the constitutional deprivations described above, the unconstitutional acts and omissions of the Defendant Oakland County Deputy Sheriffs John Doe #1-8 was ratified by an official with final decision-making authority (i.e., the Oakland County Sheriff) and a custom of acquiescence and tolerance to the Oakland County's long-standing practice of treating Black citizens differently from similarly situated White citizens, as Plaintiff was treated in this case.

81.    Defendant unconstitutional policy and custom was further evidenced by Oakland County's public release to the public of a still photo which misrepresented the actual circumstances of Tony Cox's homicide to conceal police misconduct and Deputy Sheriff John Doe #1-8.

82.    Defendant Oakland County has an unconstitutional policy and custom of failing to properly train, investigate and discipline Deputy Sheriffs who make unlawful stops, unlawfully prolong detentions, and use excessive or lethal force when such force is constitutionally prohibited.

83.    Defendant Oakland County's unlawful policy or custom was the

moving force behind the constitutional violations committed by John Doe #1-8.

84.     As a direct and proximate result of Defendant Oakland County's actions, Plaintiff's decedent suffered conscious pain and suffering, funeral expenses, lost earnings, terror, shock, dismay, confusion, disbelief, emotional distress, the loss of the pleasures of life, hedonic damages, the loss of loss of financial support loss of the society and companionship of the deceased, and other damages, allowed by law and statute, including punitive damages for Defendants' utter disregard of Tony Cox, deceased, clearly established *Fourth Amendment* and *Fourteenth Amendment* rights.

**ACCORDINGLY**, Plaintiff seeks judgment against Defendants Oakland County, jointly and severally, for damages in whatever amount in excess of this Court's jurisdictional limits to which Plaintiff is entitled, which is reasonable, fair, and just, plus costs, interest, and reasonable attorney fees, as permitted under *42 USC §§ 1983, 1985* and *1988.*

**COUNT IV**

**GROSS NEGLIGENCE**

85.     Plaintiff reasserts each allegation above, word for word and paragraph for paragraph.

86.     Defendant Deputy Sheriffs John Doe #1-8 were on duty and acting within the scope of their employment when they engaged in a wrongful stop, detention, arrest and use of lethal force as set forth above, including but not limited

21

to, using lethal force when Plaintiff's decedent was unarmed and fleeing on foot with his back to the individual Defendants.

87.     Defendant Deputy Sheriffs John Doe #1-8 engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury, let alone death, resulted.

88.     As the direct and proximate result of Defendant Deputy Sheriffs John Doe #1-8 gross negligence, Plaintiff's decedent was shot nine times in the back and killed while unarmed and running away from the individual Defendant Deputy Sheriffs.

**ACCORDINGLY,** Plaintiff asks this Court to enter judgment against Defendants John Doe. #1-8 and Oakland County, jointly and severally, for all damages allowed under Michigan's *Wrongful Death Act* and other relief to which she may be entitled.

Respectfully submitted,

s/ Joel B. Sklar
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Date:  January 7, 2025          Joel@joelbsklarlaw.com

## <u>JURY DEMAND</u>

Plaintiff Tammy Cox, as the Personal Representative for the Estate of Tony

Ray Cox, Jr., deceased, hereby demands a jury trial in the above captioned matter.

Respectfully submitted,

s/ Joel B. Sklar
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Date:  January 7, 2025          Joel@joelbsklarlaw.com